**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERIC SINKS, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Docket No._____ |
| UNITED STATES OF AMERICA, | ) | |
| *Defendant*. | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Eric Sinks, by his attorneys at the Mizner Law Firm, files this Complaint and states as follows:

### A. Parties.

1. Plaintiff Eric Sinks is an adult individual who was at all relevant times incarcerated at FCI Allenwood, located at 2 US-15, Allenwood, Pennsylvania 17810.

2. Defendant United States of America is a sovereign nation, capable of being sued under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80. Defendant United States is responsible for, among other things, the orderly operation of FCI Allenwood, as well as the well-being of all inmates, including Mr. Sinks.

### B. Jurisdiction and Venue

3. This Complaint includes claims made against the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80.

4. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within the territorial jurisdiction of this District and the Defendant is subject to personal jurisdiction within this District.

## C. **Facts**

5.      At the time of the incident described herein, Mr. Sinks was incarcerated at FCI Allenwood.

6.      On December 22, 2022, Mr. Sinks advised PA Flick in the FCI Allenwood medical department, that he had orange colored urine, and blood in his urine.

7.      Mr. Sinks' concerns were dismissed by PA Flick.

8.      On January 27, 2023, Mr. Sinks presented during sick call to advise the medical staff again about passing blood and mucus in his urine. He also reported a burning sensation during urination.

9.      PA Stoltz confirmed Mr. Sinks had discharge in his urine, and advised he would schedule a visit with the urologist on February 3, 2023, the next available date.

10.     On February 3, 2023, at approximately 7:30 a.m., Mr. Sinks was seen by the urologist, and diagnosed with a bacterial urinary tract infection, for which he was prescribed antibiotics.

11.     That same day at around 3:00 p.m., Mr. Sinks went to the "pill line" to receive his antibiotic dose, but was told the medication was not available.

12.     When Mr. Sinks asked when he could receive his antibiotic, he was told it would not be available until February 6, 2023, because prescriptions were not filled over the weekend.

13.     On February 6, 2023, Mr. Sinks again sought his prescription antibiotics in the pill line, but was told it would not be available until February 7, 2024.

14.     On February 7, 2023, at approximately 8:00 a.m., Mr. Sinks was experiencing such extreme pain and swelling in his left testical that he could not stand.

15.     He was taken to the FCI Allenwood medical building, where he was seen by RN Yordi and PA Stoltz.

16.     PA Stoltz gave Mr. Sinks three Macrobid pills and told him words to the effect of, "you're fine. You just need to let the antibiotics work."

17.     Mr. Sinks requested transportation back to his block due to the pain, but was told he was fine, and to just walk slowly.

18.     It took Mr. Sinks forty-five minutes to walk back to his housing unit, despite the fact that it was only four tenths of a mile away from the medical building, due to the severe pain.

19.     On February 8, 2023, Mr. Sinks' condition was continuing to worsen, and he was taken back to the FCI Allenwood medical building, where he underwent an EKG which showed rapid atrial fibrillation and a significantly elevated heart rate.

20.     Based on his vital signs, the medical staff called for an ambulance, and he was transported to UPMC Williamsport Hospital, where he was admitted.

21.     He was placed on two different IV antibiotics, as staff advised Mr. Sinks that he was septic.

22.     On February 9, 2024, Mr. Sinks was advised by a urologist that the infection had gone untreated for too long, and had spread to his testical.

23.     Mr. Sinks was told the best course of action was to remove the testical, due to risk of further complication from infection, severe pain, and risk of gangrene.

24.     On February 14, 2023, Mr. Sinks' left testicle was amputated.

25.     As a result of the testicle amputation, Mr. Sinks requires hormone replacement therapy for the rest of his life, and has been advised he has a close to zero percent chance of being able to reproduce.

26.     Mr. Sinks filed an Administrative Tort Claim, commonly referred to as a Form 95, with the Department of Justice on March 22, 2023, seeking $2.5 million dollars in damages.

27.     On April 10, 2024, Mr. Sinks received a response from the US Department of Justice, stating: "We have reviewed your claim, the accompanying documentation, and the applicable law, and have decided to deny your claim." The letter advised Mr. Sinks that he had a right to bring a personal injury claim within six months.

28.     Thus, Mr. Sinks has exhausted his administrative remedies against the United States.

## COUNT I - FEDERAL TORT CLAIM ACTION

*Eric Sinks*
*v.*
*United States of America*

29.     The preceding paragraphs are incorporated by reference as if set forth fully herein.

30.     The United States of America is the only proper Defendant in an FTCA suit, and the United States has waived sovereign immunity for an FTCA action. *See Sash v. Hogsten*, 2008 U.S. Dist. LEXIS 17022 (M.D. Pa.).

31.     "The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated." *Moshier v. U.S.*, 2007 WL 1703536, * 9 (W.D. Pa. 2007); *see also Baker v. U.S.*, 2006 U.S. Dist. LEXIS 34520 * 4 (W.D. Pa. 2006).

32.     "The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of

4

his office or employment." *Michtavi v. United States*, 2008 U.S. Dist. LEXIS 107897, at *11 (M.D. Pa. Oct. 14, 2008).

33.    Mr. Sinks medical providers, all employees, agents and contractors of the United States were negligent, including but not limited to, in the following respects directly, accumulatively and/or alternatively:

    a.   Failing to provide Mr. Sinks with the antibiotics prescribed by his urologist in a timely manner;

    b.   Failing to prescribe antibiotics in a timely manner;

    c.   Failing to possess and/or exercise adequate medical skills, knowledge, experience and techniques for the proper treatment of Mr. Sinks; and

    d.   Failing to properly conform to accepted standards of medical practice and/or care in the diagnosis, treatment and medical management of Mr. Sinks.

34.    As a result of Defendant United States' tortious conduct, Mr. Sinks has suffered pain, suffering, amputation of his left testicle, need for lifelong hormone replacement therapy, inability to reproduce, fear, anxiety, fear, humiliation and embarrassment.

35.    Defendant United States of America is liable for the tortious conduct of its employees, agents and/or contracts, who committed their tortious conduct within the course and scope of their employment by the United States of America.

WHEREFORE, Plaintiff Eric Sinks respectfully requests that this Honorable Court enter judgment in his favor against Defendant United States of America in an amount in excess of $75,000.00, along with attorney fees and all other relief permitted by law.

5

Respectfully submitted,

MIZNER LAW FIRM

By: /s/ John F. Mizner

PA Supreme Court ID 53323
John F. Mizner
jfm@miznerfirm.com

PA Supreme Court ID 322823
Joseph Caulfield
jpc@miznerfirm.com

311 West Sixth Street
Erie, Pennsylvania 16507
(814) 454-3889

*Attorney for the Plaintiff*